PEOPLES STATE BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91697. Promulgated October 13, 1938.

*William P. Smith, Esq.*, for the petitioner.
*Frank B. Schlosser, Esq.*, and *Elmer C. Holt, Esq.*, for the respondent.

858

**OPINION.**

OPPER: Petitioner, closed in 1932 because of insolvency, was reopened pursuant to Michigan law [1] by virtue of a judicially approved agreement by the depositors to accept the proceeds of liquidation of certain segregated assets and the earnings of the bank for five years in satisfaction of approximately half of their deposits. These assets, of a book value equal to the allocated deposits, were held in what was designated a "Trust Fund", but the bank retained full ownership powers over their liquidation and reserved the right with the consent of the state commissioner of banking to substitute for the segregated assets any of the retained assets which might become doubtful or undesirable. Any losses of the bank were to be charged against the so-called trust fund. At the end of the five-year liquida-

[1] Act No. 8, Public Acts of 1932.

tion period the fund was to be paid to the depositors up to the full amount of their deposits, together with 3 percent per annum interest, the excess, if any, to be retained by the bank. As it finally developed in 1938, at the end of the five-year period the depositors were paid less than 50 percent of their allocated deposits. A table summarizing the figures for the taxable year 1935 as given in the stipulation appears in the margin.[2]

We begin with the assumption that the bank and "trust fund" are taxable together as one entity[3] because that position is agreed to by both parties[4] and therefore is not in issue.[5] The dispute arises by reason of the treatment accorded by respondent to the various items of income and deduction. Principally these consist of income earned by the bank, income received from assets held in the trust fund, and losses incurred on bad debts, and from the sale of capital assets, held in the trust fund. Respondent has taxed petitioner on the two income items and refused to allow the deductions. Petitioner contends that it should be given the benefit of the loss deduction or, alternatively, be freed from liability to tax on the income items. In either event there would be no income subject to tax.[6]

[2] See following table:

| | Reorganized bank | Segregated assets | | Combined | |
|---|---|---|---|---|---|
| GROSS INCOME: | | | | | |
| Interest Received | $50,401.66 | $10,288.03 | | $60,689.69 | |
| Collected on Bad Debts previously charged off | | 407.31 | | 407.31 | |
| Miscellaneous Income | 6,851.07 | | | 6,851.07 | |
| Capital Gains | 6,107.93 | 3,151.42 | | 9,259.35 | |
| Commr.'s increase in income (not disputed) | 1,459.39 | | | 1,459.39 | |
| Commr.'s increase in income—deduction disallowed for insurance paid (disputed) | 767.28 | | | 767.28 | |
| Total | 65,587.33 | | $13,846.76 | | $79,434.09 |
| DEDUCTIONS: | | | | | |
| Expenses | 60,408.87 | | | 60,408.87 | |
| Capital Losses (disallowed) | | 3,166.04 | | 3,166.04 | |
| Bad Debts (disallowed) | | 21,345.04 | | 21,345.04 | |
| Total | | | 24,511.08 | | 84,919.95 |
| Net Income (credited to Trust Fund) | 5,178.46 | (Loss) | $10,664.32 | (Loss) | $5,485.86 |
| Commissioner added interest received on segregated assets | 10,288.03 | | | | |
| Net Income of Bank per 90-Day Letter | 15,466.49 | | | | |

[3] See G. C. M. 12000, XII–2 C. B. 62.

[4] * * * both the petitioner and the Commissioner regard the "Trust Fund" here involved to be *not* a separate taxable entity from the bank. * * * (p. 15, respondent's brief.)

* * * throughout the liquidation period the bank retained such complete control of the segregated assets, both by its liquidation thereof with "the same authority it would have if such trusteed assets were fully owned by it" (depositors' agreement, par. 11), and through its power of substitution of its retained assets therefor, that it must be considered as remaining in substance the owner thereof. * * * (P. 6, petitioner's brief.)

[5] It may be noted that if the trust fund were taxable as a separate entity there would apparently be no basis for excluding the deductions, in which event the taxable income could be no more than $5,178.46 instead of the $15,466.49 claimed in the deficiency letter. See footnote 2, *supra*.

[6] See footnote 2, *supra*.

Respondent suggests a third possibility, namely, that current income is taxable on an annual basis whether earned by the bank itself or by the assets in the trust fund, but that capital losses and bad debts of the trust fund must be held in abeyance for treatment as part of the completed transaction in the year when the entire arrangement is concluded. There may be other possible methods of dealing with the petitioner's tax status, but none occurs to us, except that suggested by respondent, which would have the effect of charging petitioner with any taxable income in the instant proceeding. That being so, we expressly refrain from attempting to determine which treatment is properly applicable, if that advanced by the respondent is not.

Once it is conceded that the trust fund is the property of the bank and is to be taxed along with the bank's income in the same way as any of its other property, some special circumstance must exist to justify a departure from the statutory direction that capital losses and bad debts may be deducted in the year when they materialize. Revenue Act of 1934, sec. 23 (f) and (k). The only grounds advanced for such an exception here are, first, that petitioner's loss has been "compensated for"[7] by the depositor's agreement to accept the assets in settlement of their deposit liabilities[8] and, second, that to permit deductions to this petitioner would result in a failure properly to reflect its income.[9]

As to the first ground urged by respondent, it was not the segregated assets alone which secured petitioner's relief from liability, but these assets together with its agreement to devote its own income and that from the trust assets to the depositors. Thus, any benefit secured by it from the segregated assets was not the amount of the deposit liabilities forgiven, but this amount less the income it might earn during the operative period. If, as in the instant case, there is in a given year a net capital loss of say $21,000 and net income from bank and trust assets combined of $15,000, the decrease taking place as of the end of the tax year in the amount available to depositors is the difference between the two, namely, $6,000. This is the amount which, if no later change occurs, will represent liability forgiven.

---

[7] Revenue Act of 1934, sec. 23 (f).

[8] Respondent's brief states: "Moreover the facts show (Stip., par. 13) that *the bank has been fully compensated* for the segregated assets, they having cost the bank $939,931.06 and the bank was relieved of liability for deposits of the same amount in consideration of the assets being set aside for liquidation in payment of such deposit." A similar statement appears in the deficiency letter:

However, in regard to losses on segregated assets it seems clear that there is involved in connection with the segregated assets but one composite executory transaction, that your bank has been recompensed for losses on the segregated assets to the extent of claims relinquished by depositors, and that as a result thereof there are offsets which would eliminate otherwise allowable deductions.

This office accordingly holds that as loss or disposition of the segregated assets is so utterly indefinite and indeterminable no loss is allowable in advance of their final liquidation.

[9] Revenue Act of 1934, sec. 41.

If petitioner is charged with this amount in the current year, either as "compensation" for a loss or as income received, and also with its actual income of $15,000, the total is and necessarily must be exactly equal to the capital loss, since petitioner's cost basis of the assets in the trust fund was the same as the deposit liabilities originally allocated thereto. Even if the "compensation" theory could be applied to such a case as this, a point which we do not decide, it follows that any "compensation" derived by petitioner in the tax year falls short of the loss suffered by it by exactly the amount of its current income, with the consequence that the income is offset by the remaining loss.

Respondent's second contention is in turn based on the suggestion to which we have already referred, that the results of the liquidation must be known before it can be determined whether or not petitioner has actually suffered a loss. In the first place, it is by no means clear that each annual period can not be considered by itself so that income for each period may be properly computed without regard to the ultimate effect of the liquidation. The petitioner's current income and the loss on assets sold in the tax year are known. The doubtful item, if there be one, is the amount of indebtedness which will ultimately be forgiven. Whether or not under some other circumstances a bank situated as was petitioner might obtain taxable income from the scaling down of its deposit liability we do not consider it necessary to determine, for in this instance the amount of liabilities forgiven was so indefinite that at most it could be charged to petitioner only to the extent that the transactions concluded prior to the end of the tax year resulted in such forgiveness. And even if we add to petitioner's income the amount of indebtedness the release of which arises out of the transactions of that year, no income results since, as we have seen, the extent of the forgiveness exactly equals and must, on these facts, always exactly equal the difference between the capital losses and the income received.

On the other hand, the hypothesis that petitioner's income can not properly be reflected until the liquidation is completed, seems to us to require postponement to the year of final liquidation not only of the capital items but also of current income. Petitioner's income, the segregated assets, and the release of liability were all the subjects of one executory contract. At the time the agreement was made the amount of future income was "uncertain and indeterminable." But until the entire transaction was closed that uncertain and indeterminable quantity was, as we have seen, as much a necessary factor in calculating the effect of the entire transaction upon petitioner's situation as was the amount which would ultimately be realized from the assets themselves, the uncertain and indeterminable character of which causes respondent to urge postponement. Thus when re-

spondent contends that the loss on these assets must be deferred until the end of the liquidating period he inferentially, it seems to us, advances the same argument for postponing consideration of current income, in which event, of course, there would still be no taxable income attributable to petitioner for the year before us.

All of this results, perhaps, only by reason of the present facts that the deposit liability equaled the basis of the segregated assets, that there are capital losses on these assets greater than net income, and that all net income goes to the creditors, thereby reducing any amount required to be treated as forgiveness. But we do not purport to be passing upon other cases where the facts may be different. In the light of this disposition of the proceeding it is not necessary to consider petitioner's alternative argument that the income is not taxable to it because of its assignment to the creditors; nor its further assertion that the Act of March 1, 1879,[10] referring to the taxation of insolvent banks either in its original form or as amended by the Revenue Act of 1938, requires petitioner's income to be exempted from tax. For the same reason such doubts as may exist of our jurisdiction under that statute,[11] need not now be resolved.

While it may be unfortunate that so many open questions should remain after the decision of a proceeding regarded by both parties as a test case, we do not feel justified in attempting to decide controversial issues of law which seem to us immaterial upon the present record.

*Decision will be entered for the petitioner.*

---

[10] Sec. 22. That whenever and after any bank has ceased to do business by reason of insolvency or bankruptcy, no tax shall be assessed or collected, or paid into the Treasury of the United States, on account of such bank, which shall diminish the assets thereof necessary for the full payment of all its depositors; and such tax shall be abated from such national banks as are found by the Comptroller of the Currency to be insolvent; and the Commissioner of Internal Revenue, when the facts shall so appear to him, is authorized to remit so much of said tax against insolvent State and savings banks as shall be found to affect the claims of their depositors. * * *

[11] See *West Town State Bank*, 32 B. T. A. 531, minority opinion, and cf. sec. 818 (3), Revenue Act of 1938.